**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Anthony SCHERER,
Defendant-Appellant.**

**No. 74–2051.**

United States Court of Appeals,
Seventh Circuit.

Argued June 12, 1975.

Decided Sept. 4, 1975.

Rehearing Denied Oct. 31, 1975.
Certiorari Denied Feb. 23, 1976.
See 96 S.Ct. 1108.

Julius L. Sherwin, Marvin A. Brusman, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U. S. Atty., Gary L. Starkman, William J. Cook, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before CLARK, Associate Justice (Retired),* and SWYGERT and CUMMINGS, Circuit Judges.

SWYGERT, Circuit Judge.

Appellant Anthony Scherer was convicted of violating the firearms registration and recording requirements imposed on all federally licensed firearms dealers by 18 U.S.C. §§ 922(m), 923(g) [1] and reg-

---

* The Honorable Tom C. Clark, Associate Justice (Retired) of the Supreme Court of the United States, sitting by designation.

1. 18 U.S.C. § 922(m) reads as follows:

(m) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make any false entry in, or fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder.

18 U.S.C. § 923(g) reads in relevant part:

(g) Each licensed importer, licensed manufacturer, licensed dealer, and licensed collector shall maintain such records of importation, production, shipment, receipt, sale, or other disposition, of firearms and ammunition at such place, for such period, and in such form as the Secretary may by regulations prescribe.

ulations promulgated pursuant thereto. His conviction was based upon six counts of failing to maintain a Firearms Acquisition and Disposition Record in compliance with 26 C.F.R. § 178.125,[2] and three counts of failing to complete Treasury Form 4473 as required by 26 C.F.R. § 178.124.[3] Scherer has appealed from this judgment, urging reversal on numerous grounds. Our study of the issues presented convinces us that the ruling of the district court should be affirmed.

The appellant is a federally licensed firearms dealer operating under the firm name of Precision Shooter Supply, Box 197, Route 1, Hampshire, Illinois. He maintains an office connected to a barn on his property from which he is licensed to conduct his firearm business. Be-

tween February and August 1972, Government informant George Rivard made four "controlled buys" of firearms from Anthony Scherer. None of these transactions occurred at Scherer's formal business office, nor were the customary 4473 forms completed in order to record the identity of the weapons sold.

Approximately one month after the final sale to Rivard, special agents of the Bureau of Alcohol, Tobacco and Firearms (ATF) obtained a search warrant for Scherer's property. The warrant was executed on October 4, 1972. Over seventy firearms were seized by the Government, along with Scherer's Firearms Acquisition and Disposition Record books. These items served as the basis for Scherer's arrest, indictment, and la-

**2.** 26 C.F.R. § 178.125 reads in relevant part as follows:

(e) Each licensed dealer and each licensed collector shall on and after the effective date of this part enter into a permanent record each receipt and disposition of firearms or firearms curios or relics. . . . The sale or other disposition of a firearm or of a firearm curio or relic shall be recorded by the licensed dealer or the licensed collector not later than seven days following the date of such transaction. When such disposition is made to a nonlicensee, the firearms transaction record, Form 4473, obtained by the licensed dealer or licensed collector shall be retained, until the transaction is recorded, separate from his Form 4473 file and be readily available for inspection. . . . The record shall show the date of the sale or other disposition of each firearm or firearm curio or relic, the name of the person to whom the firearm curio or relic is transferred if such person is a licensee, or the firearms transaction record, Form 4473, serial number if the licensed dealer or the licensed collector transferring the firearm or curio or relic serially numbers his Forms 4473 and files them numerically.

**3.** 26 C.F.R. § 178.124 reads in relevant part as follows:

(a) A licensed importer, licensed manufacturer, or licensed dealer shall not sell or otherwise dispose, temporarily or permanently, of any firearm to any person, other than another licensee, and a licensed collector shall not sell or otherwise dispose of any curio or relic to any person, other than another licensee, unless he records the transaction on a firearms transaction record, Form 4473. . . .

(b) A licensed importer, licensed manufacturer, or licensed dealer, or licensed collector shall retain in alphabetical (by name of purchaser), chronological (by date of disposition), or numerical (by transaction serial number) order, and as a part of his permanent records, each Form 4473 he obtains in the cause of transferring custody of his firearms.

(c) Prior to making an over-the-counter transfer of a firearm to a non-licensee who is a resident of the State in which the licensee maintains his business or collection premises, the licensed importer, licensed manufacturer, licensed dealer, or licensed collector so transferring the firearm shall obtain a Form 4473 from the transferee showing the name, address, date and place of birth, height, weight, and race of the transferee, and certification by the transferee that he is not prohibited by the Act or Title VII of the Omnibus Crime Control and Safe Streets Act of 1968 (82 Stat. 236; 18 U.S.C. Appendix) from receiving a firearm in interstate or foreign commerce. The licensee shall identify the firearm to be transferred by listing in the Form 4473 the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm. Before transferring the firearm described in the Form 4473, the licensee (1) shall cause the transferee to identify himself in any manner customarily used in commercial transactions (e. g, a driver's license), and shall note on the form the method used, and (2) if satisfied that the transferee is lawfully entitled to receive the firearm, shall sign and date the form.

**374**

ter conviction. In addition, counts one and two of the indictment charged Scherer with failing to record the sale of three firearms to dealer Joseph Schroeder in November 1971 and April 1972. Defendant was convicted of these charges as well.

I

██ The heart of Scherer's initial argument centers around his interpretation of the 1968 Gun Control Act. Specifically, Scherer contends that he was not required to maintain records regarding the acquisition or sale of his personal firearms, and argues that the Government is estopped from asserting any duty to the contrary. Reliance is primarily placed upon Industry Circular No. 72–30, released by the Treasury Department in 1972, which specifies guidelines for the identification of personal firearms located on the business premises of licensed dealers:

A presumption exists that all firearms on a business premise are for sale and accordingly must be entered in the record required to be maintained under the law and regulations. However, it is recognized that some dealers may have personal firearms on their business premises for the purpose of display or decoration and not for sale. Firearms dealers who have such personal firearms on licensed premises should not intermingle such firearms with firearms held for sale. Such firearms should be segregated from firearms held for sale and appropriately identified (for example, by attaching a tag) as being "not for sale." Personal firearms on licensed premises which are segregated from firearms held for sale and which are appropriately identified as not being for sale need not be entered in the dealer's records.

According to Scherer's construction of the above guidelines, personal firearms located apart from the business premises need not be tagged or entered in a dealer's records. Since Scherer claims that the weapons seized were a part of his private collection and were stored in his home rather than his business office, he argues that he was exempt from recording their sale or disposition.

The necessary implication of these guidelines indicates that the act of selling a firearm, not its location or the arbitrary distinction between "personal" and "business" transactions, brings a weapon and the parties involved within the purview of federal control. In this regard the terms of 18 U.S.C. § 923(g) and the executing provisions of 26 C.F.R. §§ 178.124, 178.125 are clear. The statutes and regulations are comprehensive in their coverage, and refer to "any firearm" and "each disposition." They were designed to keep a constant record of the transfer and location of firearms in order to reduce the indiscriminate flow of such weapons and the crime that inevitably follows in their wake.[4] A licensed dealer must, therefore, comply with the recording provisions of 26 C.F.R. §§ 178.-124 and 178.125 each time he disposes of a firearm. In the instant case it is immaterial whether the weapons sold were originally acquired for Scherer's personal use or for business purposes. They became a part of his business inventory the moment they were placed on the market for resale.

II

██ Scherer also alleges that he is exempt from the recording provisions of the Gun Control Act of 1968 because the sales listed in the indictment occurred at locations other than his licensed business premises.[5] Since he was not licensed to carry on a gun trade at any of the loca-

**4.** 1968 U.S.Code Cong. and Admin.News, p. 4410 p. 7, *et seq.*

**5.** Three sales occurred inside Scherer's house, while the transfer of a fourth weapon took

place at a gun show in Palatine, Illinois. Payment for this latter transaction occurred one week later at Scherer's home.

tions mentioned, he argues that he was not a federally licensed firearms dealer as to those places and thus not subject to the requirements of 26 C.F.R. §§ 178.124 and 178.125.

Initially we cannot agree that all of the gun sales did not occur on Scherer's business premises. The house where the bulk of these transactions took place was a mere eighty feet from the defendant's office and located on the same property. Scherer's status as a licensed firearms dealer and the responsibilities that attend to that title do not end with a mere step outside the door. Moreover, the language of 26 C.F.R §§ 178.124 and 178.125 is devoid of any reference to location. It requires that *each* disposition of a firearm be recorded and kept on file at the dealer's business office, and makes no exception for transactions conducted elsewhere. Although Scherer has not obtained a license for each place at which he does business as required by 26 C.F.R. § 178.41(b), this does not absolve him of the responsibility to record these transactions. A licensed firearms dealer may not avoid this duty simply by changing his location. Scherer, therefore, was required to record the sales noted in the indictment in his Firearms Acquisition Record book within seven days after the disposition of the firearms and to complete Form 4473.

### III

The defendant next contends that such disclosures would violate his Fifth Amendment privilege against self-incrimination. Specifically, Scherer's contention rests on two grounds: first, the requirement that he keep records of business transactions which he was not licensed to conduct would disclose violations of 18 U.S.C. § 922(a)(1) and the regulations promulgated thereunder, and second, the requirement that he complete Form 4473 to record the disposition of a firearm to a nonlicensee would disclose his failure to obtain George Rivard's Firearm Owner's Identification Card number as required by Chapter 38, § 83–3(a), (b) of the Illinois Revised Statutes.

An examination of Scherer's claims shows them to be without merit. The Supreme Court's decision in *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968), makes it clear that "[t]he central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." No such "real" or substantial hazards are created here. The objectionable feature of the statutes found in *Marchetti* and the related cases of *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), and *Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), was that the act of registration itself constituted an *ipso facto* confession of criminality.

By contrast, the mere act of recording the sales of firearms or engaging in their transfer does not automatically subject a licensed firearms dealer to criminal penalties. He is not, therefore, subject to the incriminating straightjacket of alternatives created in the cases above. Nor are 26 C.F.R. §§ 178.-124 and 178.125 principally directed at persons who have failed to comply with other firearms registration provisions and thus "inherently suspect of criminal activities" as was the case in *Haynes*, 390 U.S. at 96, 88 S.Ct. at 730. Rather, we find the holding of *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), controlling in the instant situation. The statutes cited regulate an essentially non-criminal activity—the disposition of firearms—and fall within the "required records" standards established by *Shapiro* and further enunciated in *Grosso v. United States*, 390 U.S. at 67–68, 88 S.Ct. 722. As noted earlier, the recording procedures are a part of the congressional policy to regulate the sale of firearms, and are required of all federally licensed firearms dealers. Form 4473 and the entries noted in Scherer's Firearms Acquisition Record book have assumed the status of "public documents" by the fact that 18 U.S.C. § 923(g) requires them to be continuously available for inspection by Govern-

ment officials during business hours. We therefore hold that Scherer's failure to comply with 18 U.S.C. § 923(g) and the regulations promulgated thereunder was not protected by the Fifth Amendment.

## IV

Scherer also contends that the trial court erred in admitting his Firearms Acquisition and Disposition Record book, seized during the search of his premises. Scherer alleges that the search warrant was overly broad and vague in its description, and was issued upon an affidavit insufficient to establish probable cause. Both of these contentions must be rejected.

Initially, defendant's reliance upon the particularity standards enunciated in *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), is misplaced. *Stanford* involved the seizure of political books, writings, and membership lists, and thus included elements of First Amendment privileges. The Court was careful to note "the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis of their seizure is the ideas which they contain." 379 U.S. at 485, 85 S.Ct. at 511. By way of explanation, the Court distinguished "books" from "books and records" stating that a book "which is no more than a ledger of an unlawful enterprise this might stand on quite a different constitutional footing . . ." *Id.* We hold that Scherer's Firearms Acquisition Record book falls into this latter category.

Furthermore, we believe that the particularity requirement is a rule of reason. Although the propriety of a search warrant must always be measured against the Fourth Amendment's rigid prohibition of general warrants, we do not find the warrant issued in this case to be overly broad in the constitutional sense. The facts are distinguishable from *VonderAhe v. Howland*, 508 F.2d 364 (9th Cir. 1975), relied on by the defendant, where a warrant directing the seizure of "fiscal records relating to the income and expenses of Dr. Donn VonderAhe from his dental practice and other sources" was used to confiscate several cartons of personal and private material unrelated to the emergency cards sought by the authorities. We have no such abuse of the warrant here. The items seized were limited to a cache of weapons and Scherer's Firearms Acquisition Record book—the document containing the "business records relating to the purchase and sale of firearms." The defendant's argument that the agents could have inspected the volumes on the business premises as permitted by law, ignores the realities of the situation. Scherer had failed to record numerous weapons in his books. An affirmation of this belief depended upon a cross-check of the weapons with the volume entries. Since the firearms were not located in the defendant's office, seizure of both the guns and records was the only feasible method of investigation.

Secondly, probable cause for issuing the search warrant also existed. Under the command of *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), a magistrate may not properly issue a search warrant unless he can find probable cause for its issuance from facts or circumstances presented in the affidavit. Additionally, underlying circumstances from which the affiant could reasonably conclude that the informant was credible must also be presented. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1963). All of these factors are present here. Rivard's charges that Scherer was selling firearms from his house was bolstered by the four purchases made at this location, three of which were made under Government surveillance. Prior to each purchase Rivard had been able to provide Government agents with the name, price, and model number of each weapon eventually sold. Finally, Rivard's assertion that numerous weapons were lying about Scherer's house, and that Scherer was keeping two Thompson machine

guns without serial numbers in a box in his barn was corroborated by two special agents who visited the defendant's farm prior to the search.

## V

■ In regard to this latter point, Scherer also argues that the affidavit contained misrepresentations of fact because the machine guns were inoperable, missing essential parts, and thus not genuine. Scherer contends that the trial court erred in failing to grant his motion to suppress. We do not agree. We hold that the trial judge was in the best position to determine this issue on the basis of the evidence before him. Absent a showing by the defendant that the misrepresentation, if any, was intentional or reckless, the motion to suppress was properly denied.

## VI

■ Turning to counts one and two of the indictment, Scherer next argues that without proof of the year of manufacture, the Government failed to prove that the firearms sold to Joseph Schroeder were not antiques and thus exempted from the provisions of 18 U.S.C. § 923(g).[6] This contention must also be rejected. Ample testimony was produced at trial for the court to conclude that the weapons in question were not produced before 1898. Argument of Scherer's additional counsel, presented during post-trial motions, admitted that the model numbers appearing on a firearm, although not proof of the date of that particular weapon's casting, do indicate that the weapon could not have been manufactured prior to that date. This corroborated testimony given earlier by various Government witnesses and experts heard during trial. Since none of the firearms in question bear model numbers of 1898 or earlier, we believe that the Government carried its burden of proof on this issue.

## VII

■ Scherer's appeal also charges the Government with discriminatory enforcement of the Gun Control Act of 1968, and alleges error in the trial court's failure to grant a full evidentiary hearing in this matter. *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973), requires that the defendant first establish a prima facie case of discriminatory law enforcement sufficient to raise a reasonable doubt as to the prosecutor's purpose before he is entitled to a full evidentiary hearing. Scherer has not overcome this initial presumption of good faith as required by *Falk*. While it is evident that Scherer was under surveillance by Government agents for a number of years prior to his arrest, he has failed to offer evidence that he was singled out for such treatment, or that the Government's reasons for doing so belied an impermissible prosecutorial purpose. Additionally, we find no error in the district court's dismissal of Scherer's subpoenas to Government agents whose testimony was sought in regard to those matters. The alleged discriminatory events occurred prior to 1972, and Agent Brennan's surveillance of the defendant terminated in 1971. Absent a showing that these events were linked to the present indictment, the district court properly concluded that they were too remote in time and not relevant to the instant case.

## VIII

■ Scherer's final point alleges that the sixteen-month delay between his arrest and indictment created substantial prejudice and violated his Fifth and Sixth Amendment rights to a speedy trial. To bolster his charge of prejudicial delay, Scherer claims that two witnesses scheduled to testify about George Rivard's poor reputation for truth had died. Additionally, three others who allegedly would have corroborated Scher-

---

**6.** 18 U.S.C. § 921(a)(3) exempts antiques from the category of firearms regulated by the Gun Control Act of 1968. 18 U.S.C. § 921(a)(16) defines an antique firearm as "any firearm manufactured in or before 1898."

er's claim of discriminatory prosecution were unavailable at the time of trial.

*Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), relied upon by both parties, established a four-pronged balancing test for Sixth Amendment claims: the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Although we must take note of the fact that the Government fails to account for five of the sixteen months involved here, we cannot conclude that the prejudice created was severe enough to tip this balance in favor of the defendant.

Unlike *United States v. Macino*, 486 F.2d 750 (7th Cir. 1973), the Government offers justification for the delay in this case. For eleven months a comprehensive trace of the manufacture, prior sales, and final acquisition of the seventy-nine weapons seized from Scherer's home was conducted in order to investigate the possible existence of a national market in unregistered firearms. We believe the Government's interest in a full examination of this possibility outweighs any prejudice which may have resulted. Given the complexity of this task, we find the length of delay to be within the bounds of reason.

In addition, we perceive a difference between the types of witnesses involved and the degree of prejudice their absence is likely to create. *Macino* involved not only a two and one-half year delay—one year longer than that experienced by Scherer—but also the death of the only eyewitness to the crime. By contrast, the witnesses in the instant case were character witnesses. Character witness testimony, while useful in establishing a defense, is not of the same magnitude as that which provides an absolute defense. *United States v. Brown*, 354 F.Supp. 1000, 1002 (E.D.Pa.1973). Also, the absence of the three witnesses intended to bolster Scherer's claim of discriminatory prosecution created little prejudice since many of the events alleged were too remote in time and irrelevant to the present indictment. We

therefore find no constitutional violations presented by these facts.

For all the reasons stated above, defendant's conviction is affirmed.