442 So.2d 1146 (1983)
STATE of Louisiana
v.
Virginia FOAT.
No. 83-K-568.
Court of Appeal of Louisiana, Fifth Circuit.
September 9, 1983.
On Remand September 23, 1983.
*1148 Robert Glass, John Wilson Reed, New Orleans, for relator.
William C. Credo, III, Asst. Dist. Atty., Gretna, for respondent.
Before BOUTALL, KLIEBERT and GRISBAUM, JJ.
GRISBAUM, Judge.
Alleging a violation of her speedy trial rights, defendant, Virginia Foat, seeks review under our supervisory jurisdiction (Article V, Section 10, of the Louisiana Constitution of 1974) of a pre-trial ruling denying a motion to quash her indictment for murder based upon alleged Sixth Amendment to the United States Constitution and Article 1, Section 16, of the Louisiana Constitution (1974) violations. This particular speedy trial claim can only be fairly assessed after trial on the merits; therefore, supervisory and remedial writs are denied.
The right to a speedy trial is "fundamental" and is guaranteed to the accused by the Sixth Amendment to the United States Constitution.[1] It is imposed on the states by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972); Klopfer v. North Carolina, 386 U.S. 213, 222-223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). Louisiana also recognizes this right in its Constitution, Article 1, Section 16 (1974)[2] and in La.C. *1149 Cr.P. art. 701.[3] The right attaches when an individual becomes an accused whether by a formal indictment or a bill of information or by arrest and actual restraint. Dillingham v. United States, 423 U.S. 64, 65, 96 S.Ct. 303, 304, 46 L.Ed.2d 205 (1975); United States v. Marion, 404 U.S. 307, 313, 320-321, 92 S.Ct. 455, 459, 463, 30 L.Ed.2d 468 (1971); State v. Dewey, 408 So.2d 1255, 1257 (La.1982).
Barker v. Wingo set out four factors by which the speedy trial right is to be evaluated: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. As recognized by Barker v. Wingo, the right to a speedy trial is a more vague concept than other procedural rights. It is impossible to determine with precision when the right has been violated. Barker, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101. Any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case. Barker, 407 U.S. 514, 522, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101.
While in Louisiana, a pre-trial denial of a motion to quash an indictment based on violation of speedy trial rights may be properly considered by supervisory writs to appellate courts[4], under the particular facts of this case, we find the proper evaluation of the speedy trial factors outlined above can be made only after trial on the merits.
In the first place,
"[t]he amorphous quality of the right ... leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried." Barker, 407 U.S. 514, 522, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101; State v. Alfred, 337 So.2d 1049, 1057 (La.1976).
Moreover, overzealous application of this remedy would infringe "the society's interest in trying people accused of crime rather than granting them immunization because of legal error ...." State v. Alfred, 337 So.2d 1049, 1057 (La.1976), quoting United States v. Ewell, 383 U.S. 116, 121, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966).
With the above enunciated principles in mind, our analysis of the speedy trial right in the context of the record presently before us would be speculative. While it appears the length of delay between arrest[5] and the trial is sufficiently long (over six years) to warrant examination of the other Barker factors, the facts relevant to a balancing test in which the conduct of the prosecutor and the defendant can be weighed have not yet been developed and are best considered only after they have been developed at trial. See, United States v. MacDonald, 435 U.S. 850, 858, 98 S.Ct. 1547, 1551, 56 L.Ed.2d 18 (1978).
Moreover, with respect to its reasons for delay, the State explains that it acted within the bounds of its lawful discretion in *1150 determining whether to prosecute Virginia Foat in 1977. It explains:
"The passage of time; verbal communications that took place almost exclusively in this matter rather than any written confirmation of decisions; changes in personnel both at the Sheriff's office and the District Attorney's office; all these factors make it extremely difficult for the State to pinpoint a specific reason or specific reasons for deciding not to move forward with prosecution in November of 1977." Respondent State of Louisiana's Memorandum in Opposition to Application for Supervisory and Remedial Writs, p. 11.
The trial court found that it was reasonable for the State of Louisiana in 1977 to assume that John Sidote would not testify against Virginia Foat in Louisiana since he had refused under oath to testify against her at her preliminary examination in Nevada.
Defendant Foat, on the other hand, argues that Sidote's refusal to testify in Nevada is no excuse for Louisiana's inaction in not bringing her to trial in 1977. She contends that confronted with a murder prosecution in Louisiana, Sidote would have agreed to testify against her as reflected in his eventual agreement to testify against her in January of 1983. She also contends even if Sidote categorically refused to testify, the state is obliged to use other techniques to obtain the testimony of a person such as Sidote, for example, conferring statutory immunity or by stripping him of his privilege against self-incrimination by first convicting him. Therefore, defendant emphatically argues Sidote cannot be likened to a missing witness, and, in fact, there has been no change in circumstances to warrant the delay in this prosecution.
In relation to defendant's assertion of her right to a speedy trial, defendant Foat contends that in the context of this case she did all that was possible and reasonable by her counsels' three attempts in 1977 to seek resolution of her case with the Louisiana District Attorney's Office. In contrast, the State contends Virginia Foat was not, in fact, interested in obtaining her right to a speedy trial. It points to Virginia Foat's testimony that she purposely avoided any national publicity during this period because she feared the public attention would "reactivate" the Louisiana warrant.
Finally, prejudice to defendant is a factor to be weighed in a speedy trial assessment. Barker v. Wingo noted that prejudice to the defendant must be considered in the light of interests the speedy trial right was designed to protect: "i) to prevent oppressive pre-trial incarceration; ii) to minimize anxiety and concern of the accused; iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101. According to defendant, she was incarcerated for four months on her first arrest in 1977, one day on her second arrest in 1977, and three more months on her third detainment in 1983.[6] She claims her financial resources have been drained; she has had to curtail associations; suffer public obloquy; and her business and marriage have been destroyed. She also maintains the pendency of charges has prevented her from running for Democratic Central Committee in California and for City Council in Los Angeles and has also deterred her from running for the national presidency of the National Organization of Women. Importantly, the death of four of her witnesses, she claims has impaired her ability to defend herself.
The State, however, contends that defendant's testimony and assertions concerning lost political positions and employment and a destroyed marriage are speculative and self-serving. Referring to the death of four defense witnesses, the trial court in its reasons for judgment stated:
"... in my view, the testimony of these witnesses, would have minimal probative value, if any at all. And, their testimony would behave marginal relevancy in my opinion. So, the fact that these witnesses *1151 that were mentioned during yesterday's hearing are no longer available is not crucial in my determining this speedy trial motion." Record pp. 21, 22. Proceeding July 22, 1983.
In making an assessment of prejudice, the United States Supreme Court in MacDonald acknowledged that before trial an estimate of the degree to which a delay has impaired adequate defense tends to be speculative. It emphasized that prejudice can be better gauged after the trial. The Court explains:
"... a central interest served by the Speedy Trial Clause is the protection of the factfinding process at trial. The essence of a defendant's Sixth Amendment claim in the usual case is that the passage of time has frustrated his ability to establish his innocence of the crime charged. Normally, it is only after the trial that that claim may fairly be assessed." MacDonald, 435 U.S. 850, 851, 859-860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18.
Our decision to deny supervisory and remedial writs in this case is supported by the nature of the speedy trial right itself. Interpreting the Sixth Amendment speedy trial rights, the United States Supreme Court has stated:
"... the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a `right not to be tried' which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial. If the facts outlined in Barker v. Wingo, supra, combine to deprive an accused of his right to a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered." MacDonald, 435 U.S. 850, 851, 861, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18.
Under the particular facts of this case, a proper assessment of the speedy trial factors can be made only after trial; therefore, we deny supervisory and remedial writs.

ON REMAND
On remand from the Supreme Court of Louisiana, this case is before us for our review of an alleged violation of defendant Virginia Foat's speedy trial right. After reviewing the record and hearing oral argument, this court finds her speedy trial right recognized in the Sixth Amendment to the United States Constitution, Article 1, Section 16, of the Louisiana Constitution, and Article 701 of the Louisiana Code of Criminal Procedure has not been violated.
On March 28, 1977 an arrest warrant for Virginia Foat was issued by Jefferson Parish for the murder of Moises Chayo in 1965. Two events occurred on May 25, 1977 although the record does not indicate the sequence of these events. Foat was arrested in Los Angeles by California authorities. Her arrest report indicated she was a Louisiana fugitive. Also, on May 25, 1977, Louisiana sent a teletype message advising California that Louisiana held an arrest warrant dated March 28, 1977. On the following day, a Nevada arrest warrant for murder was issued for Foat. The Nevada arrest warrant had a "no bail" notation. She was subsequently extradited to Nevada. Foat's Nevada arrest report dated August 25, 1977 indicates "no bail." On August 25, 1977 a Nevada justice court set bail at $75,000. Notations on Foat's "alpha" card, a reference card used by the Nevada Sheriff's department, indicate a hold for Jefferson Parish, Louisiana, dated August 26, 1977. Nevada investigative officer Gary Minter's testimony at the motion to quash hearing in the instant case indicated Foat's bail was set in Nevada, and Foat attempted to make bail, but the Louisiana hold was an impediment. Her "alpha" card contains an entry dated September 14, 1977"... Gary Minter release hold for LA Foat can now bail." Mr. Minter testified the Douglas County District Attorney's office, authorities from Louisiana, her attorneys, and he made this decision. He testified he was positive there were communications with Louisiana concerning *1152 the decision to lift this hold. Some time between September 14, 1977 and September 22, 1977 Foat was released from custody by Nevada authorities on a $75,000 bond.
On September 22, 1977 Foat's preliminary examination was held in Nevada. At that hearing, John Sidote, Foat's ex-husband, refused to testify against her. Relying on hearsay evidence of Sidote's statement, a Nevada judge found probable cause to charge Foat for murder.
On November 11, 1977 the Jefferson Parish Sheriff's Office sent a teletype message to Douglas County Sheriff's Office in Nevada advising Nevada authorities of the outstanding arrest warrant on Foat and requesting they "detain" her for subsequent proceedings in Louisiana. On November 14, 1977 Foat, still free on bond, appeared for a habeas corpus proceeding in Nevada. Granting Foat's writ of habeas corpus, a Nevada court ordered she be discharged from the Nevada case; however, she was arrested and held by Nevada authorities due to the Louisiana request to "detain" her. On the following day, November 15, 1977, the same court issued a supplemental order releasing and discharging Foat from "custody or restraint imposed by State of Nevada." In an affidavit admitted at the hearing of this motion to quash, the Nevada district judge attested:
"I signed a second and Supplemental Order that Virginia Foat be released and discharged from custody or restraint imposed by the State of Nevada, in effect to release her from the Sheriff's hold for Louisiana (Exhibit C.) Before signing that judgment I ascertained that although there had been ample time to do so, Louisiana had never sent a certified copy of an arrest warrant for Virginia Foat, that Louisiana did not appear to have taken any formal steps to perfect its warrant in the case, and that nothing more than the telephone calls and teletypes from Louisiana to Nevada had taken place during the time Foat was in custody in Nevada."
Foat was thus released from Nevada custody. Her attorney advised her to return to California and continue life as normal, but advised it appeared the Louisiana Sheriff's Department still had authority to arrest her if they chose to do so.
On January 11, 1983, upon request of Louisiana, California authorities arrested Virginia Foat under the outstanding 1977 Louisiana arrest warrant. Foat was subsequently extradited to Louisiana on April 26, 1983, and released April 27, 1983 on $125,000 property bond. On July 21, 1983 a motion to quash her indictment based on an alleged violation of her speedy trial right was heard, and the motion was subsequently denied. It is from this ruling that defendant, Virginia Foat, has applied for supervisory and remedial writs to this Court. In our first decision, we denied supervisory and remedial writs (from the trial court's denial of motion to quash her indictment) deferring the question of whether her speedy trial right had been violated until after trial. Thereafter, the Louisiana Supreme Court stating that a "pre-trial application for supervisory writs, which presents, on a complete record, developed at a well-tried hearing, a serious, potentially meritorious issue that may be dispositive of the case, should be entertained on the merits," granted defendant's writ, and remanded this case for an opinion on the merits.
The constitutional right to a speedy trial is generically different from any other rights enshrined in the Constitution for the protection of the accused. Hence, it is impossible to determine with precision when the right has been denied. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution. Describing the right to a speedy trial as "amorphous," the United States Supreme Court has adopted an ad hoc analysis and detailed several factors which must be weighed against each other to determine whether the defendant's *1153 speedy trial right has been violated. Barker v. Wingo, 407 U.S. 514, 522, 530, 92 S.Ct. 2182, 2188, 2192, 33 L.Ed.2d 101 (1972). The factors are: length of delay, reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant. The test is not designed to supply simple automatic answers to complex questions, but, instead, to provide a framework for "a difficult and sensitive balancing process." Moreover, none of the above four factors is either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial, but, rather, they are related factors and must be considered together with such other circumstances as may be relevant. Barker v. Wingo, 407 U.S. 514, 533, 92 S.Ct. 2182, 2193. These other circumstances have included such factors as the number and complexity of legal and factual issues involved in a case and the availability of evidence. See, United States v. Avalos, 541 F.2d 1100, 1110 (5th Cir.1976).
LENGTH OF DELAY
The relevant time sequence in this case began May 25, 1977 when Virginia Foat was incarcerated in California on the Louisiana arrest warrant. At that point, Foat became an "accused" for the purposes of this speedy trial determination. Dillingham v. United States, 423 U.S. 64, 65, 96 S.Ct. 303, 304, 46 L.Ed.2d 205 (1975); State v. Dewey, 408 So.2d 1255, 1257 (La.1982). The next significant date is January 18, 1983 when Foat was indicted for murder in Louisiana. This constitutes a period of over 67 months. We measure the delay from the time of her arrest to the time of the indictment because the delay between the indictment and her trial set for October 11, 1983 may be attributable in part to her efforts to resist extradition to Louisiana during the spring of 1983 and her filing of various pre-trial motions. Thus, the length of the delayalmost six yearsis substantial, and while it is not conclusive of the speedy trial issue, it does trigger the constitutional analysis with respect to the other elements of the Barker test. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192.
REASONS FOR THE DELAY
The State attempts to justify this delay by explaining it acted within the bounds of its lawful discretion in determining whether to prosecute Virginia Foat in 1977. It further stated:
"The passage of time; verbal communications that took place almost exclusively in this matter rather than any written confirmation of decisions; changes in personnel both at the Sheriff's office and the District Attorney's office; all these factors make it extremely difficult for the State to pinpoint a specific reason or specific reasons for deciding not to move forward with prosecution in November of 1977." Respondent State of Louisiana's Memorandum in Opposition to Application for Supervisory and Remedial Writs, p. 11.
The trial court found it was reasonable for the State of Louisiana in 1977 to assume that John Sidote would not testify against Virginia Foat in Louisiana since he had refused under oath to testify against her at her preliminary examination in Nevada.
However, under Barker these are not sufficient to constitute a valid reason for delay. While such reasons should weigh less heavily than a deliberate delay to impair the defense, nonetheless this delay must be counted against the State since the State has the ultimate responsibility for providing the defendant with a speedy trial. Barker v. Wingo, 407 U.S. 515, 531, 92 S.Ct. 2182, 2192.
ASSERTION OF THE RIGHT
Barker emphasized that the assertion of the right is "entitled to strong evidentiary weight in determining whether the right has been deprived" and that the failure to assert it will "make it difficult for a defendant to prove that he was denied a speedy trial." Barker v. Wingo, 407 U.S. 514, 531-532, 92 S.Ct. 2182, 2192-2193. However, as noted in United States v. Macino, the weight to be given the absence of a demand in cases where the delay is between *1154 arrest and indictment is substantially less than in cases of post-indictment delay. United States v. Macino, 486 F.2d 750, 753 (7th Cir.1973).
Importantly, we cannot ignore the fact that a person who is arrested but not charged will always nourish the hope that the government will decide not to prosecute. Macino, supra. And like the court in Macino, "we are not, therefore, inclined to force a prospective criminal defendant to seek his own prosecution." Macino, supra. However, other courts faced with post-arrest/pre-indictment delays have required some assertion of the right. See, United States v. Edwards, 577 F.2d 883, 889 (5th Cir.1978); United States v. Garza, 547 F.2d 1234, 1235 (5th Cir.1977); United States v. Palmer, 537 F.2d 1287, 1288 (5th Cir.1976).
The record reflects defendant Foat's attorneys made three attempts in 1977 to seek resolution of the case with the Louisiana District Attorney's Office and the Sheriff's Office. In June of 1977, Foat's attorneys contacted Assistant District Attorney Shirley Wimberly of Jefferson Parish to obtain resolution of the Louisiana arrest. In October of 1977 Foat's attorneys came to Louisiana in an attempt to resolve the Louisiana charge, and on November 14, 1977, the day of a habeas corpus hearing in Nevada related to the Nevada murder arrest, Foat's attorneys spoke to Assistant District Attorney Wimberly at his home concerning her Louisiana charge. Her attorneys understood Louisiana did not consider its case worthy of trial at that point and, in fact, Louisiana had a case weaker than the one in Nevada. The attorneys understood the District Attorney's office was not interested in pursuing the case, but the Sheriff's Office was interested in pursuing the murder arrest.
This court notes these communications commenced with her initial incarceration in California and ended with her final release from the Nevada charges in November 1977. Subsequent to this release in Nevada and prior to her indictment in 1983 in Louisiana, the record reflects no evidence of any communication with Louisiana authorities which could be interpreted as an assertion of her right to a speedy trial. Thus, during at least the last five years of this six-year delay, Foat was completely silent. This silence should be weighed to some degree against her.
PREJUDICE
Barker notes that prejudice to the defendant must be considered in light of the interests the speedy trial right was designed to protect: (1) To prevent oppressive pre-trial incarceration; (2) To minimize anxiety and concern of the accused; and (3) To limit the possibility that the defense will be impaired. Barker v. Wingo, 407 U.S. 514, 532, 92 S.Ct. 2182, 2193. In addressing the initial aspect, there was no evidence of oppressive pre-trial incarceration. While the speedy trial guarantee is designed to protect against "emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial," Foat has made conclusory allegations of stress and general anxiety which demonstrate at best only minimal prejudice of a kind normally attending any criminal indictment. United States v. Jackson, 508 F.2d 1001, 1004 (7th Cir.1975); United States v. Annerino, 495 F.2d 1159, 1163-1164 (7th Cir.1974). This prejudice alone does not result in a constitutional violation without a better showing of other factors. See, Jackson, supra. Foat attempted to show by her own testimony at the hearing that the delay caused her hardship including lost political positions and employment and a destroyed marriage. However, the connection between these events and the pendency of her case is unsubstantiated.
The final aspect of prejudice is to limit the possibility that the defense will be impaired. During the hearing, Foat's deceased father's letter, in the form of an affidavit, was introduced into evidence which attested that Sidote beat his daughter, threatened her life, and professed that "he would get even ... if it was the last thing he did." Additionally, Foat testified three other witnesses had died subsequent *1155 to her arrest warrant who, she claims, would have testified similarly. Referring to the death of these four witnesses, the trial court, in its reasons for judgment, concluded: "... in my view, the testimony of these witnesses, would have minimal probative value, if at all...."
There is a difference between the types of witnesses (e.g. eye-witnesses, alibi witnesses, impeachment, or character witnesses) and the degree of prejudice their absence is likely to create. See, United States v. Scherer, 523 F.2d 371, 378 (7th Cir.1975). The witnesses in this case allegedly would have provided bias, interest or corruption evidence in compliance with La.R.S. 15:492. However, there is no evidence that other friends or relatives could not have provided the same type of testimony. United States v. Bisgyer, 384 F.Supp. 504, 505 (S.D.N.Y.1974). Moreover, these witnesses would be used for general impeachment of Sidote. Although perhaps helpful in a defense, they are of not the same importance as eye-witnesses or alibi witnesses. See, Scherer, supra. In addition the State takes the position that the testimony of these witnesses would not be admissible at trial because they refer to a relationship (between Foat and Sidote) in a time period subsequent to the crime she is accused of. Until the record reflects the State's case, it is difficult, if not impossible, to determine the prejudice, if any, to the accused's defense the absence of these witnesses will have. Although there is considerable speculation as to the State's case, it is not reflected in the record before us.
Cognizant of Barker's and Alfred's admonition that "(a)n overzealous application of the unsatisfactory severe remedy of dismissal of the indictment" would infringe "the societal interest in trying people accused of crime rather than granting them immunization because of legal error," we find Virginia Foat's right to a speedy trial has not been violated. Barker, 407 U.S. 514, 522, 92 S.Ct. 2182, 2188; State v. Alfred, 337 So.2d 1049, 1057 (La. 1976). Without detailing the facts again, we are disturbed by the State's delay in indicting the defendant, but this must be weighed against the minimal showing, if any, of prejudice in addition to the minimal, initial communication with Louisiana authorities and the subsequent five-year silence.
MOTION TO QUASH DENIED.
BOUTALL and KLIEBERT, Judges, specially concurring.
We agree with the majority opinion and would add additional reasons in support of the result reached.
The issue herein is not a matter of the statutory time limitations upon institution of prosecution or upon trial, nor is it completely based on the constitutional issue of violation of speedy trial. The constitutional right to a speedy trial is generically different from any other rights enshrined in the Constitution for the protection of the accused. As noted in the statement of facts, there are three basic time periods involved: one from the time of commission of the crime in 1965 to the warrant of arrest on March 28, 1977; the second from the issuance of and arrest under the warrant in California to the subsequent rearrest in California on January 11, 1983; and the third from that arrest to the prosecution under indictment continuing today. It is at the second of these periods that the motion to quash for violation of a speedy trial right is aimed.
That period, of course, is a period in which there were no formal prosecutions instituted in Louisiana by bill of information or indictment. There is a distinction between a Sixth Amendment violation of right to a speedy trial and the impairment or deprivation of liberty of an individual without due process of law as provided in the Fifth Amendment of the United States Constitution, upon which Louisiana Constitution of 1974, Article 1, Section 2, is based. Louisiana's Article 1, Section 22 also provides for an adequate remedy by due process of law without unreasonable delay. In the case of United States v. MacDonald, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), the Supreme Court of the United *1156 States noted the distinctions between a defendant being held to await trial and a person whose life is the focal point in an ongoing investigation. The court stated at 102 S.Ct. 1502:
"[7, 8]. The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.
Once charges are dismissed, the speedy trial guarantee is no longer applicable.8 At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation. Certainly the knowledge of an ongoing criminal investigation will cause stress, discomfort and perhaps a certain disruption in normal life. This is true whether or not charges have been filed and then dismissed. This was true in Marion, where the defendants had been subjected to a lengthy investigation which received considerable press attention.9 But with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. After the charges against him have been dismissed, `a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer.' United States v. Marion, supra, 404 U.S. [307] at 321, 92 S.Ct. [455] at 463 [30 L.Ed.2d 468]. Following dismissal of charges, any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation." Footnotes omitted.
We discern a great similarity between the circumstances in this case and the MacDonald Case. In MacDonald, the defendant was held under military charges which were subsequently dismissed. Thereupon several years elapsed before he was indicted and convicted of murder in the United States District Court. In the present case, a person was apparently murdered in 1965, but no evidence of the identity of the assailant or assailants was available. After becoming aware of statements made by John Sidote in 1977 as to the commission of the crime, the authorities in Jefferson Parish immediately caused one warrant of arrest to issue ordering the arrest of Sidote and another ordering the arrest of Virginia Foat whom he named as having actually committed the attack. After a habeas corpus hearing in Nevada caused her release upon Nevada charges arising out of Sidote's statements, Jefferson Parish withdrew its detainer or hold based upon its warrant of arrest apparently upon the basis that Sidote would not testify in the Louisiana Court. The matter then lay dormant until the events of January, 1983. At the time of her release in 1977, the evidence indicates that Foat was advised by her attorney to let the matter simply sit quietly inasmuch as she was a resident of the State of California, a considerable distance away from Louisiana. Under the circumstances, we see no unfair advantage taken by the State because the posture of the situation was that unless the State could obtain some evidence upon which to base prosecution, prosecution would never occur. Delays due to difficulty in obtaining sufficient evidence to indict or even to arrest do not mandate dismissal of a later indictment.
To us, the heart of the speedy trial issue in this case lies here. The passage of time, even if it in fact be from bureaucratic negligence, standing only, is not sufficient to sustain a ruling the accused's right to a speedy trial has been violated; no more than the accused's failure to assert the right standing alone is sufficient to sustain *1157 a holding the accused has waived her right to a speedy trial. There is here a balance between the rights of a defendant or an accused and the right of the State to continue the development of prosecution.
Applying the reasoning of the United States Supreme Court in MacDonald, supra, to the facts involved here, there is a serious question as to whether the initial arrest in California in fact gave rise to a speedy trial issue. Although the California authorities arrested the accused because they had been informed of an outstanding Louisiana arrest warrant, her extradition was to Nevada and not to Louisiana, and she was held primarily for Nevada purposes not Louisiana purposes. This raises the question of whether the Louisiana arrest warrant has been in fact executed or can be given extraterritorial effect. We note that Foat was released from custody both of Nevada and Louisiana upon the habeas corpus decision and upon Louisiana authorities informing Nevada that she was no longer to be held, nor was she to be extradited. See Kirkland v. Preston, 385 F.2d 670 (D.C.Cir.1967); Bergen v. Carson, 417 So.2d 1080 (Fla.App.1982).
We consider these facts to be sufficient to bring this case within the principles announced in MacDonald and to form one of the bases upon which we deny the motion to quash.
NOTES
[1] The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defense."
[2] The Louisiana Constitution, Article 1, Section 16 reads: "Every person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law. No person shall be compelled to give evidence against himself. An accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf."
[3] La.C.Cr.P. art. 701 provides in pertinent part: "The state and the defendant have the right to a speedy trial...."
[4] See, e.g., State v. Nowell, 363 So.2d 523 (La. 1978); State v. Neyrey, 341 So.2d 319 (La.1976); but cf. United States v. MacDonald, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) (holding a defendant, before trial, may not appeal under 28 U.S.C. § 1291 a federal district court's order denying his motion to dismiss an indictment due to an alleged Sixth Amendment speedy trial violation.)
[5] The guarantee of a speedy trial does not become applicable until the defendant in some way becomes an "accused," which is often the day of arrest. Dillingham, 423 U.S. 64, 65, 96 S.Ct. 303, 304, 46 L.Ed.2d 205; Alfred, 337 So.2d 1049, 1055. Ms. Foat was arrested in California on May 25, 1977 under the Louisiana arrest warrant and held in custody by the California authorities. She was arrested under a Nevada arrest warrant on May 26, 1977 and was extradited to Nevada on August 25, 1977. While in Nevada, she was under hold for the outstanding Louisiana arrest warrant and was not released on bail until after Louisiana's hold was withdrawn on September 14, 1977.
[6] Her three-month incarceration in California on the Louisiana murder charge in 1983 is attributable to her efforts to fight extradiction to Louisiana.