**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony MACINO and Robert Walensky, Defendants-Appellants.**

**Nos. 72–1786, 72–1787.**

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1973.

Decided Sept. 6, 1973.

Rehearing En Banc Denied Dec. 12, 1973.

Anna R. Lavin, Edward J. Calihan, Jr., Chicago, Ill., for defendants-appellants.

James R. Thompson, U. S. Atty., William T. Huyck, Terry M. Gordon, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, MOORE,* Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

SWYGERT, Chief Judge.

Defendants-appellants, Anthony Macino and Robert Walensky, appeal their convictions for violations of the counterfeiting laws, 18 U.S.C. § 472, on the ground that the twenty-eight month delay between the date of their arrest and the return of the indictments violated their sixth amendment right to a speedy trial.[1] We hold that there was a denial of a speedy trial and we reverse.

On April 8, 1968 appellants and two other persons were arrested when they attempted to pass counterfeit federal reserve notes to an undercover Secret Service agent. A preliminary hearing at which bail was set and the appellants were bound over to the grand jury was held on April 25. Both Macino and Walensky posted bond and were released. No further action was taken by the Government until August 1970 when indictments were obtained against all four participants in the April 1968 offense.

Prior to trial, Walensky filed a motion to dismiss the indictment in which he alleged that the twenty-eight month time lapse between arrest and indictment violated his right to a speedy trial. Macino filed a similar motion on October 19.

---

* The Honorable Leonard P. Moore, Senior Judge of the United States Court of Appeals for the Second Circuit, is sitting by designation.

1. In addition to the speedy trial question, each appellant challenges various ruling by the trial judge. Because of our decision on the speedy trial question, we do not reach or resolve those issues.

Both motions were denied, although the same motion by one of the other defendants was granted.[2] That defendant's motion was granted because he had, while incarcerated on a separate charge, demanded a speedy trial. Neither Macino nor Walensky ever demanded an early trial date.

■ Applying the balancing test of the Supreme Court's most recent interpretation of the sixth amendment right to a speedy trial, Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we hold that a twenty-eight month delay under the circumstances of this case requires reversal.

■ In Barker v. Wingo, the Court expressly rejected the two speedy trial theories which had gained the widest acceptance in both state and federal jurisdictions. Holding the "specified time period" approach to be without constitutional basis and too inflexible, and the "demand-waiver" approach to be inconsistent with the rule that constitutional rights cannot be waived by inaction or silence, the Court adopted a balancing test "in which the conduct of both the prosecution and the defendant are weighed." 407 U.S. at 530, 92 S.Ct. at 2192. Four factors are to be weighed: length of delay, reason for the delay, defendant's assertion of his right, and prejudice to the defendant. For purposes of this opinion, we will deal with each separately.

■ *Delay.* Several things need be mentioned concerning the extent of the delay. The delay in the instant cases is not insubstantial amounting as it does to nearly two and one-half years. However, as the *Barker* opinion points out several elements are involved in the concept of delay. It can, on the one hand, be viewed merely as the "triggering mechanism" which precipitates a speedy trial issue. Viewed as such, its significance in the balance is not great. On the other hand, delay is inextricably tied

to the question of prejudice. As the length of the delay extends, the more certain prejudice is to result. It is manifest that prejudice, always a difficult thing to ascertain, must, at some point, be presumed to result from an inordinate delay in bringing a defendant to trial. Exactly where that point lies on the spectrum of pretrial delay is uncertain, but it is clear that the longer the delay, the heavier the weight to be given it in the balance. Such was explicitly recognized by the District of Columbia Circuit in United States v. Holt, 145 U.S.App.D.C. 185, 448 F.2d 1108-1109 (1971):

> Time is the most important factor; the longer the delay between arrest and trial the heavier the burden on the Government will be in arguing that the right to a speedy trial has not been abridged. The defense claim has prima facie merit if the lapse between arrest and trial is longer than one year.

> *Explanation for delay.* Little need be said concerning the weight to be given the explanation for the delay in this case. Indeed, nothing can be said because the Government offered no explanation. Although the appellants' motions to dismiss invited the Government to explain or justify the delay, the Government apparently chose not to do so.

■ With respect to the weight to be given this factor, *Barker* is instructive. Setting forth the extremes and the middle ground, the Court notes:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or over-crowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsi-

---

**2.** The indictment against the fourth defendant was dismissed on March 2, 1971 when his death was made known to the court.

bility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Having offered no explanation, the Government has placed nothing upon the scale to offset what on its face appears to be an extreme delay. Certainly we can presume neither a deliberate attempt to hamper the defense nor a valid reason for the delay. Even if we were to assume that the delay was caused by negligence or an understaffed prosecutor's office, in the instant case, this factor must be weighed in favor of the appellants.

■ *Assertion of right to speedy trial.* Neither Macino nor Walensky made known their desire for a speedy trial until after the indictments were returned, more than twenty-eight months after appellants' initial arrest. Failure to demand a speedy trial does not constitute a waiver of that right. Failure to assert the right, however, is a factor to be weighed in cases alleging the denial of a speedy trial. In *Barker*, the Supreme Court emphasized that the assertion of the right is "entitled to strong evidentiary weight in determining whether the right has been deprived" and, conversely, that the failure to assert it will "make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 531–532, 92 S.Ct. at 2192–2193. However, the weight to be given the absence of a demand in cases where the delay is between arrest and indictment is substantially less than in cases of postindictment delay.

We cannot ignore the fact that a person who has been arrested but not charged will always nourish the hope that the Government will decide not to prosecute. We are not, therefore, inclined to force a prospective criminal defendant to seek his own prosecution. As the Court characterized its holding in *Barker*, "the rule we announce today, which comports with constitutional principles, places the primary burden on the

courts and the prosecutors to assure that cases are brought to trial." 407 U.S. at 529, 92 S.Ct. at 2191. That is especially true where the delay is preindictment.

*Prejudice.* We now turn to the question of prejudice—the final and most elusive of the factors enunciated in *Barker*. As to prejudice, the Court offers us the following guidelines:

Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

Because appellants were released on bail following their preliminary hearing, they suffered no oppressive pretrial incarceration. The remaining two forms of prejudice are, however, both present in this case.

■ As to the anxiety and stigma which inevitably attach to arrest and indictment, we must recognize that they exist despite the fact that a trial transcript or court record will seldom reveal them. Nor can this form of prejudice be treated lightly. As the Supreme Court pointedly observed in United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971), they are the "major evils protected against by the speedy trial guarantee";

Inordinate delay between arrest, indictment and trial may inpair a defendant's ability to present an effec-

tive defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy and create anxiety in him, his family and his friends. These considerations were substantial under-pinnings for the decision in Klopfer v. North Carolina [386 U.S. 213, 87 S.Ct. 988, 18 L. Ed.2d 1] *supra*; see also Smith v. Hooey, 393 U.S. 374, 377–378, 89 S.Ct. 575, 576–577, 21 L.Ed.2d 607 (1969). *See also* Strunk v. United States, 412 U. S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

■ With respect to actual prejudice to the appellants' ability to defend themselves, the record discloses that one eyewitness to the crime, a former codefendant, died before the case was eventually brought to trial. While it is true, as the Government argues, that the record does not indicate whether the testimony of this witness would have been helpful, or even available, to the appellants, we cannot gainsay that it would not have been. Certainly the death of a witness with firsthand knowledge of the events at issue creates the strong possibility of prejudice to a defendant. Further, there is positive evidence in this record that the memories of witnesses faded in the long hiatus between arrest and trial. Even the Government felt constrained to explain one of its own witnesses' failing memory. Thus, we find the comment in the prosecutor's closing argument:

> He didn't remember all those details. He was wrong on some of them. He was wrong on the dates. . . . He was relying on his memory of what happened four years ago. He had to recall it without any reports.

In light of the above we find that the four factors, when weighed together, compel the conclusion, that appellants Macino and Walensky were denied their right to a speedy trial. The delay was extraordinary, and the prejudice manifest. On balance the Government offered no explanation for the delay. Further, as noted, in the preindictment situation the failure of the defendant to demand a speedy trial must be given minimum weight. Under such circumstances, we find that it was error for the trial court to have denied the appellants' motion to dismiss the indictments for want of a speedy trial.

The judgments of conviction are reversed with direction to dismiss the indictments.

MOORE, Circuit Judge (sitting by designation) (dissenting):

I respectfully dissent. While I agree that the "balancing test" set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) must be applied in this case, I believe the majority has seriously misapplied that test to the facts presented by this case.

The first of the four factors to be weighed under the Barker v. Wingo approach to determining whether a criminal defendant has been denied a speedy trial is the *length of the delay*. I fully agree with the majority that a twenty-eight month delay is sufficient to "trigger" a Sixth Amendment speedy trial claim. *See e. g.*, United States v. Holt, 145 U.S.App.D.C. 185, 448 F.2d 1108 cert. denied, 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971).

The second factor to be weighed is the *reason* for the delay given by government. The majority here conclude that because the government has offered no explanation for the twenty-eight month hiatus between the arrest of the appellants and their indictment, "[t]his factor must be weighed in favor of appellants." I am not persuaded that such a conclusion is warranted without a specific finding in the district court as to

the reason for the delay. While the majority are no doubt correct that appellants' motions to dismiss the indictment for lack of a speedy trial "invited the Government to explain or justify the delay, [and] the Government apparently did not do so," it should be kept in mind that all such motions were heard and the trial below was completed before the Supreme Court released its opinion in *Barker*. The government may have believed at the time the question of delay was raised in this case that it did not have to divulge its reasons, if any. While I agree that *Barker* should apply here, I favor giving the government a post-*Barker* opportunity to establish the reason for this delay, and would thus remand this case to the district court. *See* United States v. Booz, 451 F.2d 719 (3d Cir. 1971); United States v. Scafo, 470 F.2d 748 (2d Cir. 1972); United States v. Valot, 473 F.2d 667 (2d Cir. 1973).

The third factor to be considered under the Barker v. Wingo approach is whether a defendant seeking to establish denial of a speedy trial has made a *demand* for a speedy trial. In *Barker* the Court advised:

> We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.
> 407 U.S. at 532, 92 S.Ct. at 2193.

Neither of the appellants in this case ever demanded a speedy trial. Both appellants did move to have their indictments dismissed for *lack* of a speedy trial, but after that motion was denied in November, 1970, neither party opposed the further delays that postponed trial until June, 1972.

The majority state that we should not expect defendants to demand a speedy trial before they have been indicted, since "a person who has been arrested but not charged will always nourish the hope that the Government will decide not to prosecute." There is no support in *Barker* or in logic for making the indictment process such a critical watershed in this area of constitutional law.

Appellants' silence here is easily explained by the well-known (and perfectly legitimate) interest of many criminal defendants in seeking to delay trial as long as possible. The *Barker* opinion itself refers to this:

> More important than the absence of serious prejudice, is the fact that Barker did not want a speedy trial. * *. * [T]he record strongly suggests that while he hoped to take advantage of the delay in which he had acquiesced and thereby obtain a dismissal of the charges, he definitely did not want to be tried.
> 407 U.S. at 534–535, 92 S.Ct. at 2194.

Appellants have demonstrated no interest in seeking an expeditious trial; their only motion was to dismiss the complaint after the delay between arrest and indictment. The majority here permit the appellants to have it both ways. Appellants are exempted from the important requirement imposed by *Barker* that they should assert their right to a speedy trial and are then permitted to acquiesce in successive further delays which postponed their trial for nineteen additional months.

Turning to the fourth and final factor to be considered in evaluating a denial of a speedy trial claim-*prejudice to defendants*, the majority here find the delay "extraordinary" and "extreme" and "prejudice manifest." I, to the contrary, find prejudice minimal or, more likely, nonexistent, and the delay simply unexplained. In its consideration of prejudice in *Barker*, the Court identified three interests to be protected: (1) preventing "oppressive pretrial incarceration," (2) minimizing "anxiety and concern of the accused," and (3) limiting "the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2193.

While there is no claim of oppressive incarceration, the majority state that they have found both remaining types of prejudice in this case. There is no disputing that the anxiety and concern of

the accused is an important interest protected by the Sixth Amendment guarantee of a speedy trial. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). It seems quite obvious, however, that the prejudice described here is tied in closely with the *demand* for a speedy trial which *Barker* also envisions. If their "anxiety and concern" were truly important to them, appellants were free to demand an expeditious trial. In referring to a defendant's "responsibility to assert his right" to a speedy trial, the Court in *Barker* noted that "[t]he strength of [a defendant's] efforts [to assert this right] will be affected * * * most particularly by the personal prejudice * * * that he experiences. The more serious the deprivation, the more likely a defendant is to complain." 407 U.S. at 531, 92 S.Ct. at 2192.

If, however, delaying their trial as much as possible was a countervailing consideration, and this may be surmised from the absence of any indication of interest on the part of appellants in an early trial, then it appears to me that little weight should be given to their anxiety and concern.

As to the prejudice to defendants because the lack of a speedy trial impaired their defense efforts, the majority find two instances of this prejudice here. Before trial was had in this case, one of the co-defendants died. Although it is not certain that this defendant would have testified and thus possibly helped appellants' cases, death of a potential witness is an event which prejudices a party seeking to establish denial of a speedy trial under *Barker*, 407 U.S. at 534, 92 S.Ct. 2182. It is not clear, however, that this co-defendant died during the twenty-eight month period here complained of. Appellants were indicted in August and September of 1970; the death of the co-defendant was not sug-gested to the Court until March, 1971. Certainly the death of a co-defendant during a time when appellants are not opposing continuances should not weigh heavily (if at all) in the "balancing" of factors prescribed by *Barker*. And can there be any doubt that if appellants had been making the demand for speedy trial envisioned by *Barker* from the time of their arrest in August of 1968 that their case would have come to trial long before the death of their co-defendant was brought to the attention of the court?

The majority also note that

there is positive evidence in this record that the memories of witnesses faded in the long hiatus between arrest and trial.

This, it is said, prejudiced the appellants' ability to defend themselves. The evidence referred to by the majority is, of course, a reference by the government to its own witness's fading memory. This is not *prejudice* to the appellants. Faded memories of prosecution witnesses are without doubt precisely what appellants had been hoping for since their arrest almost four years earlier.

In balancing the factors relevant to a determination whether there has been a denial of a speedy trial, I am not inclined to weigh in favor of appellants the apparent failure of the government to explain the twenty-eight month delay in this case. Since, the *Barker* approach was announced after proceedings in the district court had been completed, I favor remanding this case for a hearing to determine the reasons for the delay encountered here.

If an acceptable explanation is proffered, this should then be weighed against the slight prejudice which may have been suffered by these defendants as a result of their apparent acquiescence in the delay of four years which occurred here between arrest and trial.

I would vote to remand.