**Carlos KELLY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–02–578–CR.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 21, 2003.

Opinion Overruling Rehearing and Supplementing Record Nov. 25, 2003.

---

**1.** *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76–77 (Tex.2000).

228

ty supervision for possession of less than one gram of a controlled substance. Kelly challenges the trial court's denial of his suppression motion and right to a speedy trial. We reverse and remand.

## I. BACKGROUND

Kelly pleaded no contest pursuant to an agreed punishment recommendation. The trial court followed the agreement, deferred an adjudication of guilt, assessed a fine of $1,500, and placed Kelly on community supervision for a term of five years. A plea memorandum in the record, signed by Kelly, his attorney, and the prosecutor, reflects that Kelly reserved the right to appeal the trial court's ruling on his pretrial motion to suppress and speedy trial motion. On October 10, 2002, Kelly filed a timely general notice of appeal that did not comply with former rule 25.(2)(b)(3). *See* Tex.R.App. P. 25.(2)(b)(3) (amended effective January 1, 2003). Meanwhile, the rules of appellate procedure applicable to criminal appeals were amended.

## II. APPLICABLE APPELLATE RULES

Generally, rules altering procedure do not fall within the prohibition in the Texas Constitution against retroactive application of laws that disturb vested, substantive rights. *See* Tex. Const. art. I, § 16; *see also Ibarra v. State,* 11 S.W.3d 189, 192 (Tex.Crim.App.1999). Therefore, this Court applies the current rules of appellate procedure to this appeal. We may not affirm or reverse a judgment or dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities.

Randy Mack, Corpus Christi, for appellant.

Michael A. Sheppard, Dist. Atty., Robert C. Lassmann, Asst. Dist. Atty., Cuero, Terry Joseph Breen, Asst. Dist. Atty., Refugio, for state.

Before Justices RODRIGUEZ, CASTILLO, and WITTIG.[1]

**OPINION**

Opinion by Justice CASTILLO.

Appellant Carlos Kelly appeals the imposition of deferred adjudication communi-

---

1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

Tex.R.App. P. 44.3. We also are prohibited from affirming or reversing a judgment or dismissing an appeal if the record prevents the proper presentation of an appeal and can be corrected by the trial court. Tex. R.App. P. 44.4(a). Accordingly, we abated the appeal on July 21, 2003 and ordered a supplemental record to include, in compliance with rule 25.2(a)(2), the trial court's certification of Kelly's right of appeal. *See* Tex.R.App. P. 25.2(a)(2). We received a supplemental record on August 8, 2003 that includes the trial court's certification of Kelly's right of appeal. The certification reflects that the trial court gave its permission to Kelly to appeal his suppression and speedy trial motions. We now turn to the issues Kelly raises on appeal.

### III. THE ISSUES ON APPEAL

By issues one and two, Kelly contends the trial court abused its discretion in denying Kelly's amended motion to suppress because: (1) the warrant did not comply with statutory requirements; and (2) the search of Kelly's home was unconstitutional. In his third issue, Kelly asserts that the State violated his constitutional right to a speedy trial.

■ Reversal on the basis of a speedy trial violation results in dismissal. *See Brecheisen v. State*, 4 S.W.3d 761, 764–65 (Tex.Crim.App.1999). Accordingly, we address the speedy trial issue first. *See id.*

### IV. THE SPEEDY TRIAL MOTION

■ In conducting a speedy trial review, our first step is to establish the circumstances surrounding the bringing of the case to trial. *Moreno v. State*, 987 S.W.2d 195, 198 (Tex.App.-Corpus Christi 1999, pet. ref'd). Significant factors include: (1) the date the accused was arrested or charged; (2) the date of trial; (3) the State's excuse for any delay before trial; (4) the accused's actions in asserting the right to a speedy trial; (5) whether evidence or witnesses have been lost; and (6) whether the accused has suffered emotionally from the wait. *Id.* at 198–99.

### A. Surrounding Circumstances

Kelly was arrested on May 6, 2001. The State charged and indicted him for possession of more than four (4) grams of a controlled substance. Kelly was released on bond. The State also filed a motion to revoke Kelly's probation in a prior case, alleging as grounds for the revocation motion the same possession of a controlled substance that serves as the basis of this prosecution.[2] The State filed an announcement of ready in this case on July 20, 2001. Kelly appeared for arraignment on August 21, 2001. On September 21, 2001, Kelly filed a motion for physical inspection of the seized evidence. He asserted in the motion that he had a "good faith belief that the amount of substance seized allegedly from Movant's possession is less than the State claims." Kelly then appeared for settings on September 27, 2001 and October 18, 2001.

On October 22, 2001, the State submitted the seized substance for analysis by the Texas Department of Public Safety. Kelly appeared for another setting on November 13, 2001. The DPS laboratory provided to the State an analysis of the seized substance on December 6, 2001.

---

**2.** The probation revocation is also on appeal as Case No. 13–02–00132–CR, *Kelly v. State of Texas*. The State stipulated that the evidence is the same in both cases. At the plea hearing in this case, the State agreed to dismiss this case if denial of the suppression motion in the companion case is reversed. The trial court ordered Kelly's community supervision in this case to begin on his release from the five-year term of imprisonment imposed in the companion case.

The analysis concluded that the amount of controlled substance was .92 grams.

Meanwhile, Kelly appeared for settings on December 17, 2001 and February 7, 2002. On February 27, 2002, the motion to revoke was heard in the other case.

Although the trial judge controls the docket and setting of cases in Refugio County, the district clerk testified that her policy is to set a case being carried on the docket when requested by the district attorney's office. On June 12, 2002, the State sent a letter to the clerk that announced that the case was "now ready to be set on the criminal docket" and requested a trial setting on July 9, 2002. In response, the trial court set the case on the trial docket for the requested date. Kelly, although apparently late to court, appeared again on July 9, 2002. The trial court reset the case for July 29, 2002. The State filed an unopposed motion for continuance on July 10, 2002. As grounds for the motion, the State explained that a critical State's witness needed training to renew certification before September 1 and would be in training and unavailable on July 29, 2002. On August 2, 2002, Kelly filed his motion to dismiss on speedy trial grounds. He did not seek an immediate trial. The trial court reset the case to September 17, 2002 and again to October 7, 2002.

The trial court heard Kelly's motion to dismiss on October 7, 2002. Kelly testified that he had been employed before his arrest but had been unable to find work since then because he was required to repeatedly show up at court. He said that he was required to seek transportation to and from court from other family members, who also were inconvenienced. He said he was "real worried" because of the pendency of the case, which he understood to be a second-degree felony as charged by the State.[3] He testified that his memory of events surrounding the search and arrest was "not really" as clear as it would have been immediately after the events.

On cross-examination, Kelly acknowledged that his counsel had told him laboratory tests had confirmed that the actual amount of controlled substance involved was less than one gram, a state jail felony.[4] Kelly also admitted that his probation reporting requirements in the companion case required him to miss work as well as to travel farther than his appearances at court for this case demanded. He agreed that the offense for which he was charged in this case was the basis of the probation violation to which he had pleaded "true" in February of 2002 in the companion case.

The prosecutor testified at the speedy trial hearing that he could have been ready for trial before receiving the laboratory analysis in December of 2001. He explained that he would have requested expedited handling of the analysis if the case had been set for trial. Other than the unavailability of an official witness because of training commitments as grounds for its motion for continuance of the July 29, 2002 trial setting, the State provided no explanation for the delay of seventeen months between Kelly's arrest on May 6, 2001 and the date of the hearing on October 7, 2002.

Reserving his right to appeal the speedy trial issue, Kelly pleaded no contest on October 7, 2002 to possession of less than one gram of a controlled substance, a less-

---

3. *See* TEX PEN.CODE ANN. art. 12.33 (Vernon 2003) (providing for imprisonment in the Institutional Division of the Texas Department of Criminal Justice for any term of not more than twenty years or less than two years).

4. *See* TEX. PEN.CODE ANN. art. 12.35 (Vernon 2003) (providing for confinement in a state jail for any term not more than two years or less than one hundred eighty days).

er offense than that alleged in the indictment. This appeal ensued.

### B. Applicable Law

#### 1. Standard of Review

■ A bifurcated standard applies to our review of a trial court's resolution of an accused's motion to dismiss on speedy trial grounds. *Zamorano v. State,* 84 S.W.3d 643, 648 (Tex.Crim.App.2002); *State v. Munoz,* 991 S.W.2d 818, 821 (Tex. Crim.App.1999); *Moreno,* 987 S.W.2d at 199. An abuse-of-discretion standard applies to our review of the trial court's fact findings in determining speedy trial motions. *Munoz,* 991 S.W.2d at 821; *Moreno,* 987 S.W.2d at 199. Once the facts are established, we review de novo application of the law to those facts. *Munoz,* 991 S.W.2d at 821; *Moreno,* 987 S.W.2d at 199. Kelly lost in the trial court on his speedy trial claim. Accordingly, we presume the trial court resolved any disputed facts in the State's favor. *See Zamorano,* 84 S.W.3d at 648. We also defer to implied fact findings that the record supports. *Zamorano,* 84 S.W.3d at 648.

■ Most of the facts here are undisputed. Thus, the primary focus in this case is on the legal significance of the facts to Kelly's claim. *See id.* We review each speedy trial claim on its own merits. *See Knox v. State,* 934 S.W.2d 678, 681 (Tex. Crim.App.1996); *Moreno,* 987 S.W.2d at 199. The difficult and sensitive balancing as a whole involved in analyzing speedy trial issues is a legal question that we review do novo. *See Zamorano,* 84 S.W.3d at 648, n. 19.

#### 2. Substantive Factors

■ The right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution and applies to the states through the Fourteenth Amendment. U.S. CONST. amends. VI, XIV; *Klopfer v. North Carolina,* 386 U.S. 213, 222–23, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Additionally, our own state constitution and code of criminal procedure guarantee an accused's right to a speedy trial. TEX. CONST. ART. I, § 10; TEX.CODE CRIM. PROC. ANN. ART. 1.05 (Vernon Supp. 2003). While the state constitutional right to a speedy trial operates independently of the federal guarantee, we interpret the rights congruently. *Zamorano,* 84 S.W.3d at 648; *Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.1992). Thus, we balance the same factors federal courts apply to determine if a violation of the right to a speedy trial has occurred. *Zamorano,* 84 S.W.3d at 648. The factors we weigh and then balance are: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of the right to a speedy trial; and (4) prejudice to the accused as a result of the delay. *Barker v. Wingo,* 407 U.S. 514, 530–32, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Munoz,* 991 S.W.2d at 821. No single factor is decisive in determining whether an accused has been deprived of the right to a speedy trial. *Barker,* 407 U.S. at 533, 92 S.Ct. 2182. We consider all of the factors together, along with any other relevant circumstances. *Id.*

#### a. Length of Delay

■ The length of the delay is a "triggering mechanism" for analysis of the remaining *Barker* factors. *Munoz,* 991 S.W.2d at 821. Further analysis is required if the length of the delay is "presumptively prejudicial." *Id.* at 821–22. Presumptive prejudice is determined from the circumstances of the case. *See Barker,* 407 U.S. at 530–31, 92 S.Ct. 2182; *Schenekl v. State,* 996 S.W.2d 305, 312 (Tex. App.-Fort Worth 1999), *aff'd,* 30 S.W.3d 412 (Tex.Crim.App.2000). The length of the delay is measured from the time of arrest until the time of trial. *Schenekl,*

996 S.W.2d at 312 (citing *Emery v. State,* 881 S.W.2d 702, 708 (Tex.Crim.App.1994)). Most delays of eight months or longer are considered presumptively unreasonable and prejudicial. *Doggett v. United States,* 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *see Schenekl,* 996 S.W.2d at 312; *Pierce v. State,* 921 S.W.2d 291, 294 (Tex.App.-Corpus Christi 1996, no pet.). "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. The delay factor requires a two-prong inquiry. *Munoz,* 991 S.W.2d at 822. First, any speedy trial analysis depends on whether the delay is more than "ordinary." *Zamorano,* 84 S.W.3d at 648. Second, the longer the delay extends beyond "ordinary," the more prejudicial that delay is to the accused. *Id.*

### b. Reason for the Delay

■■■■ The primary burden for assuring cases are promptly brought to trial lies with prosecutors and the courts. *Barker,* 407 U.S. at 530, 92 S.Ct. 2182. The accused has the initial burden of showing sufficient delay has occurred to require application of the *Barker* balancing test. *Moreno,* 987 S.W.2d at 198. After the accused meets this burden of production, the burden shifts to the State to justify the delay. In the absence of an assigned reason for the delay, we presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay. *Dragoo v. State,* 96 S.W.3d 308, 314 (Tex.Crim.App.2003). If the State provides a reason for the delay, the burden shifts back to the accused to show diligent assertion of the right to a speedy trial and prejudice resulting from the delay. *Moreno,* 987 S.W.2d at 198.

■■■■ We assign different weight to different reasons. *Zamorano,* 84 S.W.3d at 649. A deliberate attempt to delay the trial to hamper the defense weighs heavily against the State. *Id.; Moreno,* 987 S.W.2d at 199. A finding of "bad-faith delay" renders relief almost automatic. *Zamorano,* 84 S.W.3d at 649. Mere negligence is not " 'automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced' " the defense. *Id.* (quoting *Doggett,* 505 U.S. at 656–57, 112 S.Ct. 2686). A more neutral reason, such as negligence or overcrowded court dockets, weighs less heavily but is considered nevertheless. *Zamorano,* 84 S.W.3d at 649. The State's negligence, however innocent, militates against the State. *Id.* Similarly, the ultimate responsibility for docketing delays rests with the State, not with the accused. *Id.*

### c. Assertion of the Right to Speedy Trial

■■■■ The third factor to consider is whether the accused asserted the right to a speedy trial. We give this factor "strong evidentiary weight." *See Barker,* 407 U.S. at 531, 92 S.Ct. 2182; *Haney v. State,* 977 S.W.2d 638, 642 (Tex.App.-Fort Worth 1998, pet. ref'd). Failure to assert the right makes it difficult for an accused to prove the denial of a speedy trial. *Schenekl,* 996 S.W.2d at 313. Further, if an accused asserts the speedy trial right but requests a dismissal instead of a trial, the claim is attenuated. *Id.* Similarly, a failure to assert the right in a timely and persistent manner suggests that the accused did not really want a speedy trial. *See Moreno,* 987 S.W.2d at 200. Failure to assert or lack of persistence in pursuing a speedy trial weighs against the accused. *See Sinclair v. State,* 894 S.W.2d 437, 440 (Tex.App.-Austin 1995, no pet.) (per curiam). Furthermore, "the longer delay becomes, the more likely a defendant who wished a speedy trial would be to take

some action to obtain it. Thus inaction weighs more heavily against a violation the longer the delay becomes." *Dragoo*, 96 S.W.3d at 314 (quoting G. Dix & R. Dawson, *Texas Criminal Practice and Procedure*, § 23.40 (2d ed.2001)). However, the fact that one resetting is attributable to the accused's conduct is not dispositive of the speedy trial issue. *See Zamorano*, 84 S.W.3d at 650 & n. 31.

### d. Prejudice

The final factor to consider is whether the delay prejudiced the accused. *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. We assess prejudice in light of the interests a speedy trial is designed to protect. *Id.* The right to a speedy trial was designed to prevent: (1) oppressive pretrial incarceration; (2) anxiety over the pending charges; and (3) impairment of an accused's ability to present a defense. *Id.*; *Harris*, 827 S.W.2d at 957; *Schenekl*, 996 S.W.2d at 313. The burden is on the accused to make a prima facie showing of prejudice. *Schenekl*, 996 S.W.2d at 313. Only "some showing" of prejudice, not "actual prejudice," is required. *Munoz*, 991 S.W.2d at 826 (citing *Harris v. State*, 489 S.W.2d 303, 308 (Tex.Crim.App.1973)). Once the accused makes a "prima facie showing of prejudice," the burden shifts to the State to prove " 'that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay.' " *Munoz*, 991 S.W.2d at 826 (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex.Crim.App.1973)).

The inability of an accused adequately to prepare and present a defense "skews the fairness of the entire system." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. Accordingly, we weigh the effect of delay on the accused's defense just as we weigh any other form of prejudice recognized by *Barker*. *Pierce*, 921 S.W.2d at 295. Ex-cessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. *Id.* Thus, under certain circumstances, the State's egregious persistence in failing to prosecute the accused is sufficient to warrant relief even without a showing of actual prejudice. *Id.*

Accordingly, in the absence of proof of actual prejudice, presumptive prejudice may, in proper combination with the other *Barker* factors, carry an accused's Sixth Amendment claim. *Id.* When the government's negligence causes delay and when presumed prejudice is uncontroverted, the accused should be afforded relief on speedy trial grounds. *Id.* at 296. Presumptive prejudice is "part of the mix of relevant facts, and its importance increases with the length of delay." *Dragoo*, 96 S.W.3d at 315 (quoting *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686). If the presumptive prejudice is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief. *Doggett*, 505 U.S. at 658, 112 S.Ct. 2686.

### C. Application of the Law to the Facts

#### 1. Analyzing the Factors

##### a. Length of Delay

The facts underlying the "length of delay" factor here are undisputed. Therefore, we review the trial court's application of the law to those facts de novo. *See Moreno*, 987 S.W.2d at 199. This case is a "plain-vanilla," single-defendant drug possession case. We find that on the facts of this case, the seventeen-month delay is more than "ordinary." *See Zamorano*, 84 S.W.3d at 648. Further, the delay extended more than twice as long as the eight-month delay generally viewed as presumptively unreasonable. *See id.*; *see also Harris*, 827 S.W.2d at 956. We find that

the seventeen-month delay weighs against the State and triggers further analysis of the *Barker* factors. *See Zamorano*, 84 S.W.3d at 648.

### b. Reason for the Delay

Because of disputes in the reasons for the delay in this case, we apply an abuse-of-discretion standard to this factor. *See Moreno*, 987 S.W.2d at 200. Kelly argues that the reason for the delay was the State's laxity in obtaining a laboratory analysis of the seized substance. The analysis was critical, Kelly insists, because the State had "overcharged" him with possession of an amount far in excess of what he had a good-faith reason to believe the analysis would determine. The State responds that it could have expedited the laboratory analysis if the results had been required for a trial setting. The State did not explain why it did not do so after Kelly filed a motion on September 21, 2001 putting the State on notice that the amount of the contraband was in controversy. By the prosecutor's own testimony, the State could have expedited the analysis had the State thought it important enough to do so. In any event, the absence of laboratory results only accounts for the delay from May through December of 2001. It does not account for the delay from January to October of 2002.

The State argues that the delay should not weigh against the State because the trial court was responsible for setting cases on the docket. The record belies the State's argument in this regard. The district clerk testified that she set cases carried on the docket at the State's request. The case was initially set for trial on the very date requested by the State. Further, the State did not explain why it waited until June of 2002 to request a trial setting.

The State also points out that it sought a continuance of the July 29, 2002 trial setting because a State's witness was required to complete training before September 1 and was unavailable on that date. Assuming without deciding that a witness's training requirements constitute valid grounds for a continuance of a criminal trial, the State's explanation does not account for either the State's failure to ask for a trial setting during the months preceding the witness's training deadline or the delay that occurred after the training completion had date passed. Nor did the State provide any explanation for the delay of the case for eight months after the companion probation revocation was resolved in February of 2002.

The trial court did not make findings of fact. We conclude, however, that the record does not support a balancing of the reasons for the delay in the State's favor. *See Sinclair*, 894 S.W.2d at 440. Accordingly, given the seventeen-month delay, the "plain-vanilla" character of this prosecution for simple drug possession, and the State's awareness that the amount of contraband was in controversy, we find that the State was negligent in not obtaining a laboratory analysis of the seized substance before December of 2001. Further, given the same circumstances as well as resolution of the companion probation revocation in February of 2002, we find that the State was negligent in not requesting a trial setting before July of 2002. We find that the second *Barker* factor weighs heavily against the State.

### c. Assertion of the Right to Speedy Trial

The facts underlying Kelly's assertion of the right to a speedy trial are undisputed. Therefore, we review de novo the trial court's application of the law to those facts. *See Moreno*, 987 S.W.2d at

199. We find that Kelly's failure to oppose the State's motion for continuance of the July 29, 2002 trial setting is the equivalent of the single "not ready" announcement attributable to the appellant in *Zamorano*. See *Zamorano*, 84 S.W.3d at 651. Moreover, Kelly asserted his right to a speedy trial four days after the continued setting, on August 2, 2002. Similarly, we do not find dispositive Kelly's request for dismissal rather than for an immediate trial setting. See *id*. We find that the third *Barker* factor weighs against the State.

### d. Prejudice

▆ We also review this factor de novo because the State did not refute the facts asserted by Kelly with regard to the prejudice the delay caused him. See *Moreno*, 987 S.W.2d at 201. The State contends, however, that Kelly failed to show he suffered any prejudice from the delay. See *id*. We agree with the State that prejudice was mitigated by the fact that Kelly was free on bail. Also, he did not prove any specific prejudice in the preparation or presentation of his defense, such as an inability to locate witnesses or the loss of vital evidence. However, Kelly testified to an inability to find work because of the time commitments imposed by the necessity of court appearances. He said that the severity of the second-degree felony charged by the State worried him. Accordingly, we find that the fourth *Barker* factor weighs in Kelly's favor.

Having weighed the four *Barker* factors, we now must balance them. See *Dragoo*, 96 S.W.3d at 316. In reviewing de novo the trial court's balancing of the factors, we find it instructive to compare this case to the court of criminal appeals' two most recent speedy trial decisions. See *Dragoo*, 96 S.W.3d at 316; *see also Zamorano*, 84 S.W.3d at 649.

### 2. Balancing the Factors

In *Dragoo*, the court of criminal appeals held that the length of the delay between the appellant's felony arrest and the trial (three-and-a-half years) met the appellant's burden in the first factor of the *Barker* test and triggered further examination of the speedy trial issue. *Dragoo*, 96 S.W.3d at 314. The court looked further and found that the State offered the trial court no justification for the delay. *Id*. Therefore, the second factor also weighed against the State, but not heavily. *Id*. Then, the court found against the appellant on the third factor, holding that he had failed to assert his speedy trial right for three-and-a-half years, until just before trial. *Id*. at 314–15. Finally, the court held that the appellant had not proved the final *Barker* element of prejudice. *Id*. at 315. The court noted that the appellant was serving a life prison sentence for murder during most of the time in question. *Id*. The court also found that the appellant had made no showing to the trial court that his ability to prepare and present his defense was prejudiced. *Id*. Significantly, the court also concluded that the presumption of prejudice that resulted from the lengthy delay was "extenuated by appellant's longtime acquiescence in the delay." *Id*.

In *Zamorano*, the court of criminal appeals held that the length of the delay between the appellant's misdemeanor arrest for driving while intoxicated and a hearing on his speedy trial motion (two years and ten months) as well as the length of time between his arrest and the trial (nearly four years) met the appellant's burden in the first factor of the *Barker* test and triggered further examination of the speedy trial issue. *Zamorano*, 84 S.W.3d at 649. The court looked further and found that the State offered no justification for the delay in trying the

case, a relatively simple DWI prosecution, particularly for the additional delay after the accused had asserted the right to a speedy trial. *Id.* at 650. The court noted that the record did indicate some reason for the delay in docket notations that suggested that the State sought to transfer the case to another court where a Spanish-language prosecutor was available to assist in the State's review of the accused's videotape. *Id.* Given the trial court's location in San Antonio, the court of criminal appeals found the State negligent in delaying the case for lack of a Spanish-language translator, particularly for the additional six-month delay after the case was transferred to the other court. *Id.* at 651. Therefore, the second factor weighed against the State, but not heavily or lightly. *Id.* at 650–51. Then, the court also found against the State on the third factor, finding that the appellant had asserted his speedy trial right two-and-a-half years after his arrest. *Id.* at 652. The court did not consider dispositive the fact that the appellant had sought dismissal, not an immediate trial. *Id.* at 651. The court considered it significant that the appellant had re-asserted his motion to dismiss after it was initially denied by the trial court. *Id.* at 651–52. Finally, the court held that the State did not rebut the appellant's proof of the final *Barker* element of prejudice. *Id.* at 654. The court noted that the appellant was on bail pending his trial and never claimed that his defense was specifically impaired. *Id.* at 652. Instead, the court focused on the appellant's uncontradicted testimony at the speedy trial hearing of direct economic loss in the form of lost work for repeated court appearances and reporting to his bail bondsman and of his anxiety regarding the pending case. *Id.* at 654. Significantly, the court concluded that "the sword of Damocles weighs no less merely because the source of anxiety is appellant's fear of conviction and the

resultant as-yet-unknown punishment." *Id.*

■ We conclude that this case is less like *Dragoo* and more like *Zamorano*. This state jail drug possession prosecution may have been of little moment to the State, but it mattered greatly to Kelly. *See Zamorano*, 84 S.W.3d at 655. We find that Kelly's constitutional right to a speedy trial was violated. *See id.* We hold that the trial court erred by failing to grant Kelly's motion to dismiss. *See id.* No harmless-error analysis is required. *See Brecheisen*, 4 S.W.3d at 765. We sustain Kelly's third issue.

## V. CONCLUSION

Having sustained Kelly's speedy trial issue, we do not reach his other issues. *See* Tex.R.App. P. 47.1. We reverse the judgment of the trial court. We remand the case to the trial court with directions to dismiss the prosecution of this case. *See Zamorano*, 84 S.W.3d at 655; *see also Brecheisen*, 4 S.W.3d at 765.

## OPINION ON DENIAL OF MOTION FOR REHEARING

Along with its motion for rehearing, the State has filed a motion asking to supplement the record with the resetting docket notices signed by Kelly and/or his attorney during the pendency of this case. The State's purpose is to show that Kelly's attorney was not present in court on three dates: September 27, 2001; November 13, 2001; and December 17, 2001. We grant the State's motion to supplement the record.

In its motion for rehearing, the State asserts that we substituted our judgment for the trial court's in assessing the "reason for delay" *Barker* factor. *See Barker*, 407 U.S. at 530. The State argues the trial court relied on three circumstances as

justifying the delay: (1) trial counsel's absence from three pre-trial court appearances; (2) ongoing plea negotiations that were hampered by trial counsel's absence; and (3) the prosecutor's trial of one jail case after February 27, 2002.

The State first argues that defense counsel's absences from court hindered plea negotiations and should be weighed against Kelly. The State is correct that good-faith plea negotiations provide a valid reason for delay and should not be weighed against the prosecution in a speedy trial analysis. *State v. Munoz*, 991 S.W.2d 818, 824 (Tex.Crim.App.1999). However, although the prosecutor testified during the speedy trial hearing, he did not testify that plea negotiations were ongoing or that negotiations were hampered by defense counsel's absence. Further, the State cites no authority for its proposition that defense counsel's absence from court for pre-trial appearances on days that the accused personally appeared is a reason for delay that weighs against the accused.

Moreover, as pointed out by Kelly in his response to the motion for rehearing, until December 6, 2001, when the State obtained test results of the seized contraband, the State was not ready to go to trial. Kelly filed a motion on September 21, 2001 that requested physical inspection of the seized evidence and asserted a good-faith belief he had been "overcharged." Laboratory testing proved a state-jail felony amount instead of a second-degree felony amount. Thus, even if during the speedy trial hearing the State had raised defense counsel's absences and hindering of plea negotiations as a reason for the delay, at best only one of the absences (December 17, 2001) occurred after December 6, 2001. Until the test results were back, any plea negotiations would have centered on the "overcharged" sec-

ond-degree felony, not the state jail felony to which Kelly ultimately pleaded.

Similarly, the State raises as a ground for rehearing that the prosecutor testified he tried a jail case after February 27, 2002 rather than this case, since Kelly was out on bond. However, the prosecutor did not testify that the reason he was not ready for trial in this case was a crowded docket generally or specifically that the jail case delayed the State's trial of Kelly's case. Significantly, the prosecutor's testimony did not reveal how long the jail case took to try.

Thus, instead of demonstrating that we substituted our judgment for the trial court's, the State asks that we substitute the arguments it makes in its motion for rehearing for the arguments it made to the trial court. We decline to do so.

Finally, the State argues in its motion for rehearing that the "reason for delay" factor should not weigh "heavily" against the State. It cites *Dragoo:*

> When a court assesses the second Barker factor, "the reason the government assigns to justify the delay," *Barker v. Wingo*, 407 U.S. at 531, "different weights should be assigned to different reasons," ibid. Moreover, some reasons are valid and "serve to justify appropriate delay." Ibid. Here, the State offered the trial court no reason to justify the 3–1/2 year delay between appellant's arrest and trial. Consequently, this factor, too, weighs in favor of finding a violation of the speedy trial right. Contrary to the court of appeals' assertion, however, this factor does not weigh heavily in favor of such a finding. In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay. *Accord: United States v. Macino*, 486 F.2d 750,

753 (7th Cir.1973); *Boseman v. State,* 263 Ga. 730, 438 S.E.2d 626, 629 (Ga. 1994).

*Dragoo,* 96 S.W.3d at 314. However, at the hearing on Kelly's speedy trial motion, the State did assign reasons for parts of the delay: the trial court's responsibility for setting cases on the docket, the absence of laboratory test results analyzing the seized drugs, and a continuance due to the training requirements of one of its witnesses. Accordingly, our discussion in the opinion analyzes each of the State's reasons and assigns an appropriate weight.

Finally, the State argues that the seventeen-month delay in this case is shorter than any of the delays found in the cases cited in our opinion. As we noted in our opinion, however, no single factor is decisive. *See Barker,* 407 U.S. at 533.

We supplement the record as requested. As supplemented, we deny the State's motion for rehearing.